NO. 07-05-0365-CR


IN THE COURT OF APPEALS


FOR THE SEVENTH DISTRICT OF TEXAS


AT AMARILLO


PANEL D


JULY 25, 2006

______________________________


RAMON TORREZ, APPELLANT


v.


THE STATE OF TEXAS, APPELLEE

_________________________________


FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;


NO. 2005-494,587; HON. LARRY B. LADD, PRESIDING

_______________________________



Before QUINN, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Appellant Ramon Torrez appeals his conviction by jury of failure to identify while a
fugitive from justice and his court-imposed sentence of 300 days in the Lubbock County
Jail. We will affirm the trial court's judgment and grant counsel's motion to withdraw.

 Appellant's counsel has filed a brief stating that he has carefully reviewed the record
in this case and concludes there is no reversible error and that the appeal is frivolous. See
Anders v. California, 386 U.S. 738, 744-45 (1967). Counsel also has filed a motion to
withdraw as attorney for appellant and, by letter, has informed appellant of his right to file
a pro se brief. Johnson v. State, 885 S.W.2d 641, 646 (Tex.App.-Waco 1994, pet. ref'd). 
By letter dated February 22, 2006, this court also notified appellant of his opportunity to
submit a response to the Anders brief and motion to withdraw filed by his counsel, granting
him until March 24, 2006 to do so. This court's letter also reminded appellant to contact
his counsel if he needed to review any part of the appellate record to prepare a response. 
Appellant has not filed a brief or other response. 

 We have independently examined the entire record to determine whether there are
any non-frivolous grounds which might support the appeal. See Penson v. Ohio, 488 U.S.
75 (1988); Stafford v. State, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991). We have found
no such grounds. After reviewing the record before us and counsel's brief, we agree with
counsel that the appeal is frivolous. See Bledsoe v. State, 178 S.W.3d 824 (Tex.Crim.App.
2005).

 Accordingly, counsel's motion to withdraw is granted and the trial court's judgment
is affirmed. 



 James T. Campbell

 Justice


Do not publish.



the emotional and physical danger to the child now and in
the future, 4) the parental abilities of the individuals seeking custody, 5) the programs
available to assist those individuals to promote the best interest of the child, 6) the plans
for the child by those individuals seeking custody, 7) the stability of the home, 8) the acts
or omissions of the parent indicating that the existing parent/child relationship is not a
proper one, and 9) any excuse for the acts or omissions of the parent. In re P.E.W., 105
S.W.3d 771, 779-80 (Tex. App.-Amarillo 2003, no pet.). More importantly, one need not
prove that each Holley factor favors termination. Id. at 780. Nor is the list exhaustive. In
re C.J.F., 134 S.W.3d 343, 354 (Tex. App.-Amarillo 2003, pet. denied). Instead, there
must simply be enough evidence from which the factfinder can reasonably form a firm
conviction or belief that the child's best interest justifies termination. In re P.E.W., 105
S.W.3d at 780. 

 The record before us showed that Chavez, who was mildly retarded and had only
a ninth grade education, had been raised in a home where she was abused and neglected. 
Furthermore, her first pregnancy by Cano (who was in his twenties at the time) occurred
when she was fifteen years old. That child was stillborn. Other evidence illustrated that
Chavez eventually lived with Cano for a year and a half and that he physically threatened
and abused her. After one such instance of abuse, the Department of Family and
Protective Services (Department) became involved. And, though Chavez knew that she
was not to see Cano, she disregarded that.

 Next, after the birth of A.C., the child became sick with meningitis and RSV and had
to be hospitalized. Hospital personnel called the Department and reported their concerns
regarding Chavez' ability to care for the sick child. This resulted in the Department taking
custody of the infant. 

 Also appearing of record is the following evidence: 1) Chavez and A.C. were placed
in several different foster homes together but had to be removed due to the poor behavior
of Chavez (as exemplified by her effort to physically confront a foster parent), 2) the foster
parents had to constantly remind Chavez to do things for the care of the child, 3) Chavez
ran away after being placed with the PAC shelter in Amarillo and having A.C. removed
from her custody for holding the child by the ankles and swinging her, 4) Chavez returned
to Cano after she ran away, 5) she was next placed with a shelter in Wichita Falls where
she stayed for only one day before running away and being arrested for driving without a
license, 6) Chavez was placed in a shelter in Lubbock but was removed after she
disappeared for a time with an eleven-year-old child, 7) she failed on more than one
occasion to place children in safety seats, 8) Chavez had been stopped for driving a car
on the wrong side of the road when she had another infant with her and had drunk eight
bottles of "Bacardi," 9) she was resistant to learning from services offered by the
Department, failed to complete counseling and parenting classes, and had a poor support
system in her life, 10) she lacked the ability to parent and could not place the child's needs
above her own, according to psychological testing, 11) she had been arrested and jailed
for truancy at the time of trial, 12) Chavez only worked for three weeks at the only job she
ever had, 13) she gave birth to another child by another father at the time of trial and
intended to live with him and have him support her and the child, 14) neither Chavez' family
nor Cano's family had passed a home study, and 15) A.C., who was nearly two years old
at the time of trial, was doing well with her foster parents, which foster parents had an
interest in adopting her. 

 Evidence that a mother cannot provide a stable, safe, and secure environment
supports a finding that it is in the child's best interest to terminate a mother's parental
rights. See Hann v. Texas Dep't of Protective and Regulatory Services, 969 S.W.2d 77,
83-84 (Tex. App.-El Paso 1998, pet. denied) (upholding the termination because evidence
appeared of record illustrating that the parent could not provide such an environment). The
litany of evidence itemized above established Chavez' inability to provide such an
environment. Thus, the trial court had before it evidence upon which it reasonably could
have formed a firm belief or conviction that termination of the parental rights of Chavez was
in the best interest of A.C. 

 The order of the trial court is affirmed.


 Brian Quinn

 Chief Justice 
1. The State contends that Chavez failed to timely file a statement of points as well. We disagree. The
trial court's order of termination was signed on August 1, 2007, and the statement of points was not filed
marked until August 20, 2007. Yet, it was mailed to the clerk on August 16, 2007. Given the mailbox rule,
See Tex. R. Civ. P. 5 (providing that any document sent to the clerk in an envelope properly addressed and
stamped and is deposited in the mail on or before the last day for filing and received by the clerk not more
than ten days late shall be deemed filed in time), Chavez satisfied the fifteen-day rule specified in the Texas
Family Code. See Tex. Fam. Code Ann. §263.405(b) (Vernon 2002) (requiring the statement to be filed within
fifteen days of judgment).